IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WILLIAM EUGENE ROBINSON, <br><br> Plaintiff, <br><br> vs. <br><br> CAROLYN W. COLVIN, <br> Acting Commissioner, Social Security Administration, <br><br> Defendant. | Case No. 12-CV-355-CVE-FHM |

## REPORT AND RECOMMENDATION

Plaintiff, William Eugene Robinson, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] The case has been referred to the undersigned United States Magistrate Judge for report and recommendation.

## Standard of Review

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to a determination of whether the record as a whole contains substantial evidence to support the decision and whether the correct legal standards were applied. *See Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept

---

[1] Plaintiff's April 27, 2009, application for disability benefits was denied initially and on reconsideration. A hearing before Administrative Law Judge ("ALJ") John Volz was held September 2, 2010. By decision dated October 7, 2010, the ALJ entered the findings that are the subject of this appeal. The Appeals Council denied Plaintiff's request for review on April 26, 2012. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

## Background

Plaintiff was 51 years old on the alleged date of onset of disability and 53 on the date of the ALJ's denial decision. He has a high school education and formerly worked as welder and mechanic. He claims to have been unable to work since October 1, 2008 as a result of back pain due to degenerative disc disease of the cervical spine, pain from left rotator cuff tear, and chronic knee pain.

## The ALJ's Decision

The ALJ determined that Plaintiff has the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. §§404.1567(a), 416.9678(a). Although Plaintiff is unable to perform his past relevant work, based on the testimony of the vocational expert, the ALJ determined that Plaintiff has acquired work skills from past relevant work that are transferable to other occupations and there are a significant number of jobs in the national economy that Plaintiff could perform with these limitations. The case was thus decided at step five of the five-step evaluative sequence for determining whether a claimant is disabled. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

**Plaintiff's Allegations**

Plaintiff asserts that, notwithstanding the testimony of the vocational expert, the ALJ's findings regarding the transferability of skills to sedentary work is not supported by substantial evidence or by the Dictionary of Occupational Titles (DOT).

**Analysis**

From December 1986 to April 2002, Plaintiff worked as a mechanic for Owasso Public Schools. From 2002 until 2008 he worked as a welder. [R. 167]. Plaintiff indicated that in his position as a welder, he used machines, equipment and tools, used technical knowledge or skills, performed writing and completing of reports, and supervised people, including hiring and firing. [R. 167-171, 176-178]. Plaintiff indicated that as a mechanic he used machines, tools or equipment and used technical knowledge or skills. [R. 172, 178].

The vocational expert testified that both of Plaintiff's former occupations were skilled work. [R. 52]. The vocational expert testified that the skill of supervision, operating tools and equipment, the skill of reading and writing reports, and knowledge of repair procedures were transferable skills. *Id.* According to the vocational expert, an individual with Plaintiff's transferable skills who was limited to the performance of sedentary work could perform the semi-skilled jobs of assignment clerk in motor transportation, which involves keeping records and checking vehicles in and out, and the job of maintenance dispatcher. *Id*. The ALJ accepted the vocational expert's testimony and based on that testimony found that Plaintiff is not disabled. [R. 29-30].

Plaintiff says this case turns on "whether Robinson acquired skills in his past relevant work that would qualify him to perform sedentary work." [Dkt. 17, p. 1]. That statement does not accurately express the questions presented in this appeal. Using Social Security disability vernacular, the questions raised are these:

> 1) whether substantial evidence supports the finding that Plaintiff acquired skills in his past relevant work;
>
> 2) whether substantial evidence supports the finding that the identified skills are transferable to work existing in the economy.

As hereafter discussed, the undersigned finds that the answer to both of the foregoing questions is yes. Accordingly, the undersigned recommends that the Commissioner's denial decision be affirmed.

## Acquisition of Skills

Plaintiff argues that: (1) some of the identified skills are not skills at all but are general knowledge and abilities and (2) the record does not support the skills the ALJ found Plaintiff possessed from his past work.

### Skills or General Abilities

The undersigned rejects Plaintiff's attempt to characterize the identified transferable skills as "general abilities." Plaintiff argues that "reading and writing reports" is not actually a skill but are general abilities learned in school that workers possess in differing degrees. According to Plaintiff, unless the report is a technical report such as accounting, the ability to read a report cannot be considered a skill as the term is defined in Social Security Ruling (SSR) 82-41, 1982 WL 31389.

SSR 82-41 defines what a skill is:

> A skill is knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn). It is practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner. This includes activities like making precise measurements, reading blueprints, and setting up and operating complex machinery. A skill gives a person a special advantage over unskilled workers in the labor market.
>
> Skills are not gained by doing unskilled jobs, and a person has no special advantage if he or she is skilled or semiskilled but can qualify only for an unskilled job because his or her skills cannot be used to any significant degree in other jobs.
>
>        \*   \*   \*
>
> A person's acquired work skills may or may not be commensurate with his or her formal educational attainment.

SSR 82-41, 1982 WL 31389 at \*2. Plaintiff identified writing and reading of reports as being among the tasks he performed as a welder and a self-employed welder engaged in working on oil field equipment. [R. 169, 171, 177]. While the ability to read and write may be viewed as general abilities, reading and writing *of reports* in the context of performing work as a welder or self-employed welder on oil field equipment easily fits within the foregoing definition of a skill.[2]

---

[2] Plaintiff now argues that the vocational expert had the wrong idea about what was entailed in reading and writing of reports in Plaintiff's former employment. The undersigned does not believe that is the case, but notes that Plaintiff was represented by counsel at the hearing. The vocational expert's testimony that the reading and writing of reports was a skill acquired in Plaintiff's past work was rendered in the presence of Plaintiff and his counsel. Indeed, at the outset of the hearing, Plaintiff's attorney and the ALJ discussed the likely application of the Medical Vocational Guidelines (Grids) and the subject of transferability of skills. [R. 40]. Plaintiff's attorney certainly had the opportunity to elicit testimony to correct the matter at the hearing but did not.

    The undersigned is fully aware that it is not the claimant's burden to produce or develop vocational evidence at step 5. *Dikeman v. Halter*, 245 F.3d 1182, 1186 (10th Cir. 2001)(quoting *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999). However where, as here, a subject is clearly addressed at the hearing the failure to cross-examine the vocational expert on the subject may result in a waiver of the issue. *See Glass v. Shalala*, 43 F.3d 1392, 1396-97 (10th Cir. 1994). Requiring Plaintiff's attorney to take some action at the hearing to correct what Plaintiff now argues is a mistaken impression of the information Plaintiff provided concerning his past work would not shift the burden to produce or develop vocational evidence at step 5.

The finding that Plaintiff acquired the skill of reading and writing reports in his past work is supported by substantial evidence in the record.

### Support in the Record for Acquired Skills

The undersigned disagrees with Plaintiff's assertion that because the record does not contain a detailed description of what was involved in the reading and writing of reports and supervision, the record does not support the conclusion that any specific skills were acquired.

Plaintiff identified reading and writing of reports and supervision as things he did on the job as a welder and a self-employed welder. [R. 168, 169, 171, 176, 177]. The vocational expert is a specialist who is qualified as an expert because he has acquired knowledge about job skills, qualifications, and requirements. The vocational expert testified based on his expertise and his review of Plaintiff's prior work. [R. 52]. In addition to the information in the record that Plaintiff provided about his past work, the vocational expert's testimony constitutes evidence. The ALJ's finding that Plaintiff acquired the skills of reading and writing reports, supervision, operating tools and equipment, and repair procedures in his former work is supported by substantial evidence in the record.

### **Transferability of Skills to the Jobs Identified by the Vocational Expert**

Plaintiff argues that the most significant problem is that the skills in his past work have absolutely nothing to do with the skills required for the jobs the vocational expert cited. [Dkt. 17, p. 8]. Plaintiff bases this argument on the premise that the only skills he acquired in his past work were welding and mechanic work. *Id*. According to Plaintiff, the "bottom line" is that the record does not support the ALJ's finding of transferable skills. [Dkt. 17, p. 10]. The undersigned rejects that premise. As previously stated, substantial

evidence supports the finding that Plaintiff acquired the skills of reading and writing reports and supervision. Plaintiff makes no objection to the finding that he acquired the skills of operating tools and equipment and repair procedures.

The real question in this case is whether substantial evidence supports the conclusion that the skills Plaintiff acquired in his past work are transferable to the jobs the vocational expert identified. The ALJ stated:

> The vocational expert was asked if any occupations exist which could be performed by an individual with the same age, education, past relevant work experience, and residual functional capacity as the claimant, and which require skills acquired in the claimant's past relevant work **but no additional skills.**

[R. 29] [emphasis supplied]. The record reflects that the vocational expert was <u>not</u> asked to identify jobs that require no additional skills. [R. 52]. If there were a requirement that the jobs identified require no additional skills, the ALJ's finding would not be supported by substantial evidence. However, such a requirement does not apply to this case.

The Commissioner's regulations provide that in order to find transferability of skills to skilled sedentary work for individuals who are 55 and over, "there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.00 (f); SSR 82-14, 1982 WL 31389 *5. There is no similar requirement of "very little, if any, vocational adjustment" for individuals like Plaintiff who are in the 50 to 54 year old age group. As a result, the undersigned concludes that the fact that the ALJ did not ask the vocational expert whether other skills were required in the jobs identified does not require reversal.

Plaintiff argues that his job skills do not transfer to the jobs identified by the vocational expert simply because those jobs are categorized in the DOT as clerical. According to Plaintiff the identified skills are not transferable to the jobs identified because those jobs are clerical ones that he says would require computer skills that the record does not show he possesses or acquired in his past work. The fact that the jobs are clerical may be relevant to the degree of vocational adjustment required for the jobs, which is a consideration for individuals over 55, but not for one of Plaintiff's age. 20 C.F.R. § Pt. 404, Subpt. p., App. 2 §201.00(f).

Plaintiff argues that the skills required to perform the jobs identified by the vocational expert are not ones acquired in his past work. In support of this contention Plaintiff cites to the descriptions of those jobs in the Dictionary of Occupational Titles (DOT). Plaintiff asserts that the DOT descriptions do not show that a mechanic or welder would have a "special advantage" in the performance of those jobs, therefore Plaintiff states the skills are not transferable to those jobs. [Dkt. 17, pp. 8-9]. Plaintiff cites to *Dikeman,* 245 F.3d at 1185, for the proposition that "neither an occupational title by itself nor a skeleton description of a job is sufficient to document the claimant's acquisition of skills." [Dkt. 17, p. 9].

Plaintiff's citation to *Dikeman* is inapt. Notably, the language quoted from *Dikeman* refers to acquisition of skills, not to transferability. The language comes directly from SSR 82-41, 1982 WL 31389, at *4, and appears in the section of the SSR which discusses what sources of job information might be employed to determine what work skills were involved in a job. The SSR instructs that job information may be obtained from a variety of sources but that skills and potential occupations to which skills may be transferred are for the ALJ

to determine with the assistance of a vocational expert when required. 1982 WL 31389, at 4. The ALJ did not run afoul of this provision. The ALJ did not use the job title or the skeleton job description to determine either the skills acquired or the job to which the skills may be transferred. Rather, the ALJ relied on the testimony of a vocational expert as instructed by SSR 82-41.

SSR 82-41 counsels that transferability is most meaningful where a lesser degree of skill is involved, same or similar tools or machines are used, the same or similar raw materials, products, processes, or services are involved. SSR 82-41 stresses that a complete similarity of all factors is not necessary. 1982 WL 31389, at *5. SSR 82-41 requires the ALJ to make certain findings of fact and include them in his decision. The acquired work skills must be identified, and the occupations to which the skills are transferable must be cited. Evidence that the jobs exist in significant numbers should also be included and such evidence may take the form of vocational expert testimony. 1982 WL 31389, at *7. The ALJ's decision contains all of these points.[3] [R. 29].

Plaintiff argues that the DOT job descriptions demonstrate that a welder or a mechanic would not have any advantage in the jobs identified by the vocational expert. Plaintiff calls the conclusion that the skills of welder or mechanic are transferable to the jobs the vocational expert identified is "ridiculous," [Dkt. 17, p. 8], and "simply absurd." *Id*. at 9. Contrary to Plaintiff's assertions, the finding that the identified acquired skills are

---

[3] If there is a problem with the ALJ's opinion, it is a decision writing error not pointed out by Plaintiff. Welder is the only past relevant work identified by the ALJ in the decision. [R. 29]. The vocational expert also identified mechanic as Plaintiff's past relevant work which was done at the skilled level and from which transferable skills were acquired. [R. 52]. The undersigned views the ALJ's failure to include the mechanic job in the opinion as past relevant work as harmless error.

transferable, at least to the job of maintenance dispatcher, is supported by substantial evidence.

The vocational expert identified the skills of operating tools and equipment and repair procedures as being acquired in both past jobs and the skills of supervision and report reading and writing as being acquired in the welding jobs. Taking into account the vocational expert's testimony and comparing the DOT description[4] to the acquired skills, demonstrates that the finding that Plaintiff acquired skills that are transferable to the job of maintenance dispatcher is supported by substantial evidence. It is not, as Plaintiff argues, ridiculous or absurd to conclude that the identified transferable skills would give Plaintiff a "special advantage over unskilled workers in the labor market" applicable to the job of Dispatcher, Maintenance Service, DOT # 239.367-014, 1991 WL 672225. *See Dikeman v. Halter*, 245 F3d at 1184 (quoting SSR 82-41, 1982 WL 31389, at *2).[5] A similar comparison of the description of the job of assignment clerk[6] and the identified skills

---

[4] The DOT, 1991 WL 672225, lists the following as the job description for Dispatcher, Maintenance Service:
> Receives telephone and written orders from plant departments for maintenance service, such as repair work, machine adjustments, and renewals or installation of other plant property, and relays requests to appropriate maintenance division. Keeps record of requests and services rendered. Requisitions supplies for maintenance and clerical workers.

[5] In running his own welding business, Plaintiff must have received requests for work, analyzed what materials and personnel were necessary for a job, estimated a price to be charged for the work, obtained the materials, performed the work, managed the personnel on the job, billed for the work, and kept records necessary to run the business. These are the same types of things required in the maintenance dispatcher job identified by the vocational expert. Together with knowledge of repair procedures Plaintiff acquired in welding and in the mechanic job, Plaintiff would have an obvious advantage over a job applicant who did not have such skills.

[6] The DOT, 1991 WL 671905, lists the following as the job description for Assignment Clerk:
> Assigns operating personnel of busline to partial, temporary, or rush hour runs to meet daily human resource and transportation needs of company"
> Records driver staffing requirements for unstaffed scheduled runs from data received from personnel department. Prepares list of extra drivers available in ready room for assignment for regular, special, or charter trips. Selects

10

does not reveal as obvious a correlation, although the skill of supervising employees would likely give Plaintiff an advantage in that job. It is enough, however, that one such occupation exists in significant numbers. *See Evans v. Chater*, 55 F.3d 530, 532–33 (10th Cir.1995) (holding that the Commissioner satisfies his burden at step five by demonstrating that there are one or more jobs in significant numbers that the claimant is able to perform with her physical and mental limitations). The undersigned finds that the ALJ's conclusion that the identified skills are transferable to the dispatcher job is supported by substantial evidence.

The undersigned finds that, contrary to Plaintiff's arguments, this case is not like the *Dikeman* case. In *Dikeman*, the Tenth Circuit reversed the ALJ's decision regarding transferable skills because the record contained "little, if any" evidence of Plaintiff's transferable skills, and the vocational expert did not specify what skills Plaintiff' acquired. 245 F.3d at 1186. On remand, the ALJ was required to make specific findings as to Plaintiff's particular transferable skills and the specific jobs to which the skills are transferable. *Id*. at 1188. The information that was missing in *Dikeman* is present in the record and in the decision in this case.

## **Conclusion**

The undersigned United States Magistrate Judge RECOMMENDS that the denial decision be AFFIRMED. In accordance with 28 U.S.C. §636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation.

---

drivers according to such considerations as seniority, experience, and time, location, and duration of assignment. Records and submits data on assignments to personnel department. May prepare and issue bulletins regarding policy, procedure, and schedule changes.

Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma on or before September 3, 2013.

If specific written objections are timely filed, Fed.R.Civ.P. 72(b)(3) directs the district judge to:

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

See also 28 U.S.C. § 636(b)(1).

The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for de novo review by the district court or for appellate review.

DATED this 20th day of August, 2013.

_____
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE